UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| PHYLLIS MARIE THOMPSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | CAUSE NO. 3:11-CV-472 CAN |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On December 13, 2011, Plaintiff Phyllis Marie Thompson ("Thompson") filed her complaint with this Court. On May 29, 2012, Thompson filed her opening brief asking this Court to enter judgment in her favor or remand this matter to the Commissioner. On August 4, 2012, Defendant Commissioner of Social Security, Michael J. Astrue ("Commissioner"), filed his response brief. Thompson filed a reply brief on August 13, 2012. This Court may enter a ruling in this matter based on the parties' consent. 28 U.S.C. § 636(c); 42 U.S.C. § 405(g).

**I.  PROCEDURE**

On March 24, 2009, Thompson filed her application for Title II disability insurance benefits pursuant to 42 U.S.C. § 423 based on obesity, heart problems, back and shoulder pain, and mental disorders. On March 31, 2009, Thompson also filed a Title XVI application for supplemental security income pursuant to 42 U.S.C. § 1382.[1] In both applications, Thompson alleged disability beginning November 30, 2008. Her claims were initially denied on September

---

[1] The regulations governing disability insurance benefits and supplemental insurance benefits are codified independently, but those relevant to this case are virtually identical. Therefore, this opinion will cite solely to the regulations governing disability insurance benefits found at C.F.R 20 §§ 404.1500 *et seq*. The parallel supplemental security income regulations may be found at 20 C.F.R. §§ 416.900 *et seq*.

3, 2009, and also upon reconsideration on January 25, 2010. Thompson appeared at a hearing before an administrative law judge ("ALJ") on February 8, 2011.

On February 25, 2011, the ALJ issued a decision determining that Thompson was not disabled. The ALJ found that Thompson met the insured status requirements of the Social Security Act through December 31, 2011; that Thompson had not engaged in substantial gainful activity since November 30, 2008; and that Thompson had physical impairments considered to be severe, including obesity, heart problems, back and shoulder pain, and bipolar disorder. Nevertheless, the ALJ determined that Thompson's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. With regard to Thompson's residual functional capacity ("RFC"), the ALJ determined that, based on the medical evidence, Thompson can lift and carry up to 10 pounds occasionally and less than 10 pounds frequently, stand or walk for at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. The ALJ also found that Thompson is limited to frequent balancing, occasional stooping, crouching, balancing, crawling, kneeling, climbing of ramps or stairs, and overhead reaching; can never climb ladders, ropes, or scaffolds; and should have the option to sit or stand at will while performing work. Furthermore, the ALJ found that Thompson is unable to perform her past relevant work as a stores laborer, production assembler, or foam machine operator, but retains the RFC to perform other jobs that exist in significant numbers in the national economy.

On October 12, 2011, the Appeals Council denied Thompson's request for review of the ALJ's decision, thus making it the Commissioner's final decision. *See* 20 C.F.R. § 404.981; *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005). Thompson filed a complaint in this Court

2

on December 13, 2011, seeking review of the ALJ's decision. The sole issue raised by Thompson is whether the ALJ's definition of "moderate" during the ALJ's hypothetical questions to the vocational expert ("VE") at her hearing failed to account for Thompson's moderate mental limitations and thus failed to properly conform with the Social Security Administration's guidelines. For the reasons stated below, the Court denies Thompson's motion to reverse or remand.

## II.    ANALYSIS

### A.    Facts

Thompson was forty-five years old on the alleged disability onset date and forty-seven years old at the time the ALJ denied her claim. She had a ninth grade education and was considered morbidly obese. The ALJ identified numerous severe physical and mental impairments plaguing Thompson, including bipolar disorder. However, the ALJ determined that these severe impairments did not meet or equal a listed impairment qualifying her for disability.

The ALJ also found that Thompson suffered from non-severe mental impairments that impose moderate restrictions in her activities of daily living and moderate difficulties with her concentration, persistence or pace, and social functioning. Nevertheless, she had the ability to perform many activities requiring significant concentration, including making jewelry, driving a car, and reading. Thompson also experienced no episodes of decomposition.

In assessing Thompson's mental RFC, the ALJ considered the entire medical record, including Thompson's severe and non-severe mental impairments. As to Thompson's non-severe impairments, the ALJ noted the August 2009 findings of Dr. Carrie Cadwell. Dr. Cadwell conducted a consultative psychological examination of Thompson and reported that Thompson

had a disorganized thought process but no difficulties in conducting household tasks and day-to-day activities. Dr. Cadwell assigned Thompson a GAF score of 51, indicating no more than moderate limitations in adaptive functioning.[2] The ALJ also noted the reports of the Madison Center dating from September 2009 to January 2011, which indicated that Thompson suffered from bipolar disorder and attention deficient hyperactivity disorder. In this report, Thompson complained of anxiety, depression, and concentration problems but indicated that she does well on her medications. The Madison Center reports also noted that Thompson's stream of thought, talk, and mental activities were coherent, relevant, and goal directed.

The ALJ also gave "significant weight" to the mental RFC assessment of Thompson by Dr. Joelle Larsen, the Social Security Administrations psychological consultant, on September 9, 2009. (Tr. 17). Dr. Larsen indicated that Thompson's RFC exhibited several marked and moderate limitations. In elaborating on her assessment of a "moderate" limitation, Dr. Larsen noted that:

> [Thompson can] cooperate and tolerate the casual interactions necessary to perform tasks[,] . . . appears to have the cognitive abilities and concentration necessary to complete tasks[,] . . . can make work related decisions, remember locations and remember work like procedures[,] . . . pace appears to be [within normal limits] and [she can] attend to a 2 hour task[,] . . . [is] capable of maintaining a schedule[,] . . . [and her] impairments might interfere with complex task completion . . . [but] allow for the completion of other tasks.

(Tr. 642).

---

[2] The Global Assessment of Functioning scale rates a "clinician's judgment of the individual's overall level of functioning" on a scale of 0 to 100. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Ed., Text Revision, 32, 34 (2000).

At Thompson's hearing on February 8, 2011, the ALJ presented the VE with hypothetical questions reflecting Thompson's RFC. First, the ALJ asked the VE whether an individual with Thompson's age, education, and experience, who was limited to light work and "occasional stooping, crouching, crawling, kneeling, balancing, [and] climbing," could perform Thompson's past relevant work. (Tr. 69). The ALJ elaborated, instructing the VE to:

> . . . assume that [such a hypothetical person] has marked limits in the ability to understand, remember, and carry out detailed tasks and instructions . . . [and] . . . moderate limits in the ability to maintain and [concentrate], . . . to sustain an ordinary routine without special supervision[,] . . . [to] complete a normal workday and workweek without interruptions from psychologically based symptoms[,] . . . to perform at a consistent pace without unreasonable number and length of rest periods[,] . . . [and] to interact with the general public.

*Id.* For purposes of the hypothetical, the ALJ defined "moderate" as meaning "there are some limitations, but the person can still perform the tasks satisfactorily" and defined "marked" as meaning "the degree of limitation interferes seriously, but does not preclude the ability to function." (Tr. 69–70). In response, the VE testified that a hypothetical person with the same, age, education, work experience, and RFC as Thompson would not be able to perform any of her past relevant work. However, the VE testified that such a person would be able to perform jobs existing in significant numbers in the national economy. The ALJ's decision mirrored the VE's testimony as to past relevant work and available jobs.

### B. Standard of Review

In reviewing disability decisions of the Commissioner of Social Security, the Court shall affirm the ALJ's decision if it is supported by substantial evidence and based on the proper legal criteria. 42 U.S.C. § 405(g); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir.

2005); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny the benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). A reviewing court may not substitute its own opinion for that of the ALJ's or re-weigh evidence; however, "the ALJ must build a logical bridge from the evidence" to her conclusion. *Haynes*, 416 F.3d at 626. The ALJ's decision "cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

A claimant must establish that she is disabled to be eligible for disability insurance benefits or supplemental security income. 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As set forth in the Social Security regulations, a five-step sequential evaluation process is used to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider whether: (1) the claimant is presently employed at a substantial gainful level; (2) the claimant's impairment or combination of impairments is severe; (3) the claimant's impairments meet or equal any impairment listed in the regulations; (4) the claimant is able to perform her past

relevant work given her residual functional capacity (RFC); and (5) the claimant can adjust to other work in light of her RFC given her age, education, and experience. *Id.*; *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

A finding of disability requires an affirmative answer at either Step Three or Five. *Briscoe*, 425 F.3d at 351–52. If the impairment or impairments fail to meet or equal a severe impairment listed by the Social Security Regulations at Step Three, the ALJ must assess the claimant's RFC. 20 C.F.R. § 404.1520(e). "The RFC is an assessment of what work-related activities the claimant can perform despite [her] limitations." *Young*, 362 F.3d at 1000. In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the case record, including impairments determined to be non-severe. 20 C.F.R. § 404.1545(a)(1)–(3); *Young*, 362 F.3d at 1001. At Step Four, the claimant must show that, based on her RFC, she is unable to perform any past relevant work. *Id.* at § 404.1520(f). If the claimant is unable to perform past relevant work, the ALJ will consider whether the claimant's RFC prevents her from performing other substantial gainful employment. *Id.* at § 404.1520(g). If the claimant can perform such employment under Step Five, she is considered not to be disabled. *Id.* The claimant bears the burden of proving Steps One through Four, whereas the burden at Step Five is on the Commissioner. *Young*, 362 F.3d at 1000.

        **C.**        **The ALJ's definition of "moderate" in the hypothetical questions posed to the VE accurately accounted for Thompson's moderate mental limitations.**

The sole issue for review is whether the ALJ's hypothetical questions to the VE regarding Thompson's ability to perform work accurately accounted for Thompson's moderate mental limitations. Thompson is not challenging the ALJ's decision regarding the severity of Thompson's impairments, her RFC, and the jobs that she is able to perform.

7

Thompson contends that the ALJ used an erroneous definition of "moderate" in her hypothetical questions to the VE, which ultimately resulted in the ALJ's determination that Thompson can perform work despite her mental limitations. She asserts that the ALJ's interpretation of the word "moderate" was inconsistent with the definition set forth in the Program Operations Manual System ("POMS") and was thus an inaccurate reflection of Thompson's mental limitations. She further argues that the ALJ's definition of moderate precluded any consideration as to whether Thompson could perform work-related tasks satisfactorily. Thompson therefore concludes that the ALJ's reliance on the vocational testimony was inadequate in making its Step Five determination.

The POMS manual contains the Social Security Administration's internal rules of procedure. *Schweiker v. Hansen*, 450 U.S. 785, 790 (1981). Specifically, POMS 24510.063(B)(2) instructs state agency mental and psychological consultants assigned to assessing a claimant's mental limitations. According to the POMS 24510.063(B)(2), "moderately limited," with regard to a claimant's mental RFC, indicates that "evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS 24510.063(B)(2). It elaborates that "[t]he degree and extent of the capacity or limitation must be described in narrative format . . ." *Id*. "The POMS manual has no legal force" and is not controlling. *Parker for Lamon v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989) (*citing Schweiker*, 450 U.S. at 789). Although the POMS manual does not impose judicially enforceable duties on an ALJ, it is considered persuasive. *Carillo-Yeras v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011); *Stroup v. Barnhart*, 327 F.3d 1258, 1262 (11th Cir. 2003); *Bubnis v. Apfel*, 150 F.3d 177, 181 (2nd Cir. 1998); *Davis v. Secretary of Health and Human Services*, 867 F.2d 336, 340 (6th Cir.

1989). Hypothetical questions "posed by the ALJ to the VE must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994).

> During the hearing, the ALJ asked the VE to consider a hypothetical individual who:
>
>> . . . has marked limits in the ability to understand, remember, and carry out detailed tasks and instructions . . . [and] . . . moderate limits in the ability to maintain and [concentrate], . . . to sustain an ordinary routine without special supervision[,] . . . [to] complete a normal workday and workweek without interruptions from psychologically based symptoms[,] . . . to perform at a consistent pace without unreasonable number and length of rest periods[,] . . . [and] to interact with the general public.

(Tr. 69). The ALJ defined "moderate" by stating that "there are some limitations, but the person can still perform the tasks satisfactorily." (Tr. 69–70).

Dr. Larsen, the Social Security Administration's psychological consultant, conducted a mental RFC assessment of Thompson on September 9, 2009, and determined that Thompson was moderately limited in her ability to maintain attention and concentration for extended periods; sustain an ordinary routine with special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rests; and interact appropriately with the general public. In Dr. Larsen's narrative assessment, she explained that a moderate limitation meant that Thompson's "impairments might interfere with complex task completion" but "would allow for the completion of other tasks." (Tr. 642). Additionally, Dr. Larsen explained that a moderate limitation meant that Thompson "can cooperate and tolerate casual interactions necessary to perform tasks[,] . . . appears to have the cognitive abilities and concentration necessary to

9

complete tasks[,] . . . [has a] pace [that] appears to be within normal limits[,] . . . [and is] capable of maintaining a schedule." *Id.*

Here, the rules contained in the POMS manual have no legal force and are, at best, persuasive. Thus, the ALJ is not obligated to define "moderately limited" to the VE in the precise manner laid out in POMS 24510.063(B)(2). Nevertheless, the ALJ's hypothetical questions must fully account for Thompson's impairments to the extent that they are supported by the medical evidence in the record. *Herron*, 19 F.3d at 337. In her hypothetical questions to the VE, the ALJ properly incorporated Thompson's moderate limitations as defined by the record medical evidence, particularly Dr. Larsen's mental RFC assessment of Thompson. The ALJ, in her own terms, clearly tracked Dr. Larsen's determinations in formulating her questions to the VE and defining Thompson's limitation thresholds.

Thompson's argument still fails even if the POMS manual guidelines were controlling. POMS 24510.063(B) represents a continuum of limitations including "not significantly limited," "moderately limited," and "markedly limited." To account for this wide range of limitations, POMS 24510.063(B) offers flexibility in defining the precise contours of moderately limited by requiring that "the degree and extent of the capacity or limitation . . . be described in narrative format . . ." POMS 24510.063(B)(2). The language of both the ALJ and Dr. Larsen described the existence of impairments and limitations that accurately indicated that Thompson's mental functional capacity was "moderately limited," but neither indicated that Thompson's impairments rose to the level that she "cannot usefully perform or sustain . . . [activities]." *See* POMS 24510.063(B)(3) (defining "markedly limited"). As required by POMS 24510.063(B)(2), Dr. Larsen described the moderate limitation of Thompson's impairments in narrative form, and

the ALJ, in posing the hypothetical question to the VE, followed Dr. Larsen's findings. Therefore, the ALJ's hypothetical question properly defined the extent of Thompson's moderate limitations.

Thompson further argues that the ALJ, by defining "moderately limited" as meaning "that there are some limitations, but the person can still perform tasks satisfactorily," failed to accurately reflect her impaired capacity. Thompson reasons that the term "'satisfactorily' implies that the completion of the task fulfills the employer's expectations" and is "logically incompatible with 'impaired' ability." This argument also fails. Although a moderate mental limitation indicates that an individual's capacity to perform tasks is impaired, POMS DI 24510.063(B)(2) "does not require that the individual's capacity be at a level that is unacceptable," as Thompson implies. *Smith v. Commissioner of Social Security*, 631 F.3d 632, 637 (3d Cir. 2010). The ALJ's definition of "moderately limited," similar to Dr. Larsen's conclusions, accurately reflected that Thompson's impairments caused some limitations; however, the mere existence of her particular limitations does not automatically render her work unsatisfactory.

Therefore, the ALJ's definition of "moderate" in the hypothetical questions posed to the VE accurately accounted for Thompson's moderate mental limitations and was supported by substantial evidence in the medical record. The ALJ's reliance on the VE's testimony was adequate in making its Step Five determination.

### III. CONCLUSION

This Court concludes that the ALJ's decision is supported by substantial evidence and based on the proper legal criteria. The ALJ's definition of "moderately limited" in her

hypothetical question to the VE reasonably accounted for Thompson's moderate mental limitations. Therefore, Thompson's motion to reverse or remand is **DENIED**. This Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is instructed to term the case and enter judgment in favor of the Commissioner.

**SO ORDERED.**

Dated this 31st day of January, 2013.

S/Christopher A. Nuechterlein  
Christopher A. Nuechterlein  
United States Magistrate Judge